IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE PETTAWAY, ) | |
|     Plaintiff ) | |
| ) | |
| vs. ) | C.A.No. 13-213ERIE |
| ) | District Judge Hornak |
| MAXINE OVERTON, et al, ) | Magistrate Judge Baxter |
|     Defendants. | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is respectfully recommended that the motion to dismiss by Defendant Maxa [ECF No. 70] be GRANTED.

It is further recommended that Defendant Alexander-Gottesman Jill be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

The Clerk of Courts should be directed to remove Christine Zirkle from the docket and close this case.

**II.  REPORT**

    **A.  Relevant Procedural History**

Plaintiff, acting *pro se*, filed this civil rights action on July 16, 2013. After a telephonic hearing held on September 9, 2013, this Court administratively closed this case and sought counsel to represent Plaintiff. ECF Nos. 18, 20. Following declinations by several attorneys, in April of 2014, Attorney Olexandra Tolmatska, entered an appearance on behalf of Plaintiff and

1

this Court reopened the case and allowed counsel to file an Amended Complaint, along with a motion for preliminary injunction. See ECF Nos. 31, 33, 36, 37.

The Amended Complaint alleges that Plaintiff's Eighth Amendment rights were violated when Defendants failed to provide him with adequate medical monitoring and medical and mental health treatment during his incarceration at SCI Albion from 2008 through June of 2013. As Defendants to this action, the Amended Complaint names: Maxine Overton, Health Care Administrator; Robert Maxa, Medical Director; Alexander-Gottesman Jill, Psychiatrist; Nancy Giroux, Superintendent; Melinda Adams, Deputy Superintendent; Michael Clark, Deputy Superintendent of Centralized Services; David Zetwo, Deputy Superintendent for Facilities Management; and John Skindell, Unit Manager.

An evidentiary hearing was held on the motion for injunctive relief on June 30, 2014, at which Plaintiff and prison medical staff testified. ECF No. 45. This Court filed a Report and Recommendation on July 1, 2014, recommending the denial of Plaintiff's motion. ECF No. 48. District Judge Hornak later adopted the Report and Recommendation as the opinion of the Court. ECF No. 59.

Although represented by appointed counsel during this time period, Plaintiff continued to draft filings on his own behalf. See ECF Nos. 50, 51, 54, 56. Around this same time, counsel for Plaintiff filed a motion to withdraw as counsel and Plaintiff, acting *pro se*, filed a motion to "disqualify" his counsel. ECF Nos. 56, 57. The motion to withdraw was granted and the motion to disqualify was dismissed as moot. In July of 2014, Plaintiff then filed a notice of Appeal to the Third Circuit on this Court's dismissal of his motion to disqualify counsel. ECF Nos. 60, 61. In early January 2015, the case was returned from the Third Circuit, as Plaintiff's *pro se* appeal was dismissed for lack of appellate jurisdiction.

Previously, on September 9, 2014, Defendant Maxa moved to dismiss based upon Plaintiff's failure to exhaust his administrative remedies in accordance with the requirements of the Prison Litigation Reform Act. ECF No. 70. In opposition to the motions to dismiss, instead of filing an opposition brief, Plaintiff filed a proposed Second Amended Complaint [ECF No. 77] as he was permitted to do. ECF No. 72, Response Order. However, Plaintiff's proposed Second Amended Complaint was **not** deemed filed as it was not signed by Plaintiff in violation of Local Rule 10.[1] [2]

By Order of this Court dated January 13, 2015, following the return of the case from the Third Circuit, Plaintiff was given another opportunity to file an opposition brief and/or a **signed** proposed amended complaint. See ECF No. 72. Plaintiff filed both. See ECF Nos. 91, 92.

### B. Standards of Review

#### 1. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor

---

[1] Additionally, the proposed pleading began with a typewritten page including paragraphs on jurisdiction and venue, then progressed into handwritten pages including case law citations, Internet medical articles, misconduct report, inmate request to staff members, confiscated item receipts, etc. ECF No. 77. Plaintiff's proposed Second Amended Complaint failed to provide any factual narrative, failed to specify what the named Defendants did to violate his constitutional rights, and failed to reference several of the named Defendants.

[2] The proposed Second Amended Complaint named Christine Zirkle as a Defendant in her capacity as the Healthcare Administrator who replaced Maxine Overton in that position. Because the proposed Second Amended Complaint was not deemed filed by this Court, the name of Christine Zirkle should not have been entered on the docket by the Clerk of Court. Accordingly, the Clerk should be directed to remove her name from the docket.

3

syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same).

Because Plaintiff is, once again, a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp.,

394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 3. Motion for summary judgment

Defendant Maxa has submitted several exhibits in support of his motion to dismiss. Therefore, this Court will convert the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) March 10, 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P.

56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at *1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**C. Defendant Maxa's motion**

**1. The Exhaustion Requirement of the Prison Litigation Reform Act**

Defendant Maxa moves to dismiss this case based upon Plaintiff's failure to exhaust his administrative remedies in accordance with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013).[4] The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the

---

[3] It is not a plaintiff's burden to affirmatively plead exhaustion. Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir.2013); Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Moreover, "the defendant must prove that the prisoner-plaintiff failed to exhaust *each* of his claims. There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim." Small, 728 F.3d at 269 (emphasis in original) quoting Jones, 549 U.S. at 220-24.

[4] "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" Small, 728 F.3d at 270, quoting Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010). See also Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

8

exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.[5]

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

### 2. The Administrative Process Available to State Inmates

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") (formerly known as Central

---

[5] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

Office) within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

Records pertaining to the first two levels of administrative review are generally housed at the prison, while records pertaining to the final level of review are kept at SOIGA. If the SOIGA does not have an appeal file, the grievance was not fully exhausted through the highest level of review.

### 3. Analysis of Plaintiff's use of the administrative remedy process

In support of his motion to dismiss, Defendant Maxa has provided Plaintiff's grievance file maintained by the Secretary's Office of Inmate Grievances and Appeals, which is the final level of administrative review available. A letter from Helen Shambaugh, a Grievance Review Officer at SOIGA, indicates that Plaintiff's grievance file at her office contains one appeal. ECF No. 71-2, page 1. This grievance (460513) is unrelated to the subject matter of this case as it grieved racial discrimination in the placement of inmates into prison jobs. Id. at page 5. As such, the record before this Court demonstrates that Plaintiff failed to exhaust any of his medical claims forming the basis of this lawsuit through the final level of review.

In opposition to Defendant Maxa's motion to dismiss, Plaintiff argues that

> Doctor Robert Maxa waived his exhaustion claim by concealing life threatening injuries for sixteen months [sic] Plaintiffs missed the fourteen day grievance deadline [sic] because he had no reason to know he had a medical problem until after time had expired and he had been transferred to another prison. […]
>
> Defendants concealed my life threatening injuries for sixteen months that I sustain acute myocardial injury and acute kidney injury from overdose of lithium without taking my blood for five months without keeping track of lithium levels […]

ECF No. 92, page 2.

10

Plaintiff's contention that prison staff concealed the nature of his medical injuries from him for sixteen months is not borne out by the record before this Court. The Amended Complaint indicates that Plaintiff was hospitalized for lithium poisoning in June of 2013 [ECF No. 36, ¶¶ 40-42; see also Plaintiff's *pro se* proposed Amended Complaint at ECF No. 91, ¶¶ 40-42]. Plaintiff's Grievance Number 464657[6] dated June 14, 2013 references the same hospitalization and seeks follow-up treatment. See ECF No. 71-3, page 17. Therefore, Plaintiff alleged lithium poisoning was not hidden from him and cannot form the basis for this Court to excuse him from the exhaustion requirement of the PLRA.

Accordingly, summary judgment should be granted in favor of Defendant Maxa.

### D. Failure to Serve Defendant Alexander-Gottesman Jill

The docket sheet reflects that service has not been accomplished against Alexander-Gottesman Jill. This Defendant was named in the Amended Complaint filed by Plaintiff's counsel on May 26, 2014. As a result, this Defendant should be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as he has not been served within 120 days of the date on which he was named as a Defendant in this case. See Rule 4(m) (giving Court authority to dismiss a case after failure to serve).

## III. CONCLUSION

It is respectfully recommended that that the motion to dismiss by Defendant Maxa [ECF No. 70] be GRANTED.

---

[6] The record reflects that this grievance was not exhausted through the final level of review. See ECF No. 71-3, pages 1-17.

It is further recommended that Defendant Alexander-Gottesman Jill be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

The Clerk of Courts should be directed to remove Christine Zirkle from the docket and close this case.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 9, 2015